Filed 12/29/20  P. v. Singletary CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ELLIOT SINGLETARY,<br><br>    Defendant and Appellant. | B301566<br><br>(Los Angeles County<br>Super. Ct. No. LA021100) |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory A. Dohi.  Appeal dismissed.

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

On June 9, 1995, appellant, 19-year-old Elliot Singletary, went to the mall with his codefendant Tommy Williams and four young females, in a car driven by one of the females. Singletary and some members of his group gathered outside the mall near where Mohamed Seyedi, Ramtin Shaolin, and four other young males were gathered. (*People v. Williams* (June 2, 1998, B107685) [nonpub. opn.], p. 2.)[1] Seyedi asked Singletary if he had any marijuana. Singletary said no and asked Seyedi's group if they were gang members. Seyedi responded, with words to the effect, " 'No. Do we look like gang-bangers? What kind of question is that?' " (*Ibid.*) Singletary replied, with words to the effect, " 'That's the question I asked you.' " (*Id.* at pp. 2-3.) After a bit, Singletary walked back to the car, where Williams was sitting, and the two had a conversation. Then, Singletary ordered the girls to get back in the car. (*Id.* at p. 3.)

The car carrying Singletary's group drove off with one of the girls in the driver seat, Singletary in the front passenger seat, Williams on the right side of the rear passenger seat, and the other three girls to the left of Williams in the rear passenger seat. (*People v. Williams*, *supra*, B107685, p. 3.) Singletary directed the driver to follow Seyedi's group, as the group walked to their car. On occasion, Seyedi's group stopped, and the car stopped as well. During the second such stop, Singletary and Williams exited the car, opened the trunk, and moved their hands in a way that suggested they were exchanging something. Seyedi's group continued to walk to their car, and the car carrying Singletary's group continued to follow them. (*Ibid.*) When Seyedi's group

_____

[1] The cited opinion is from Singletary's and Williams's direct appeals from their judgments of conviction.

turned onto a pedestrian walkway, Singletary told the driver to go around the back of a building to see if Seyedi's group was there. (*Id.* at p. 4.) When the car caught up to the group on foot, Williams asked Singletary which member of Seyedi's group " 'was talking shit to him.' " (*Ibid.*) One of the girls pointed to Seyedi. The driver pulled the car alongside Seyedi's group and stopped. Williams leaned out the back window of the car, fired about nine gunshots, and shouted, " 'you don't gang-bang, but you do now,' " along with some profanity. (*Ibid.*) Shaolin died from a gunshot wound, and two other members of the group (not Seyedi) were struck by gunfire.

At Singletary and Williams's joint trial, the trial court instructed the jury on a direct aiding and abetting theory of murder liability with CALJIC No. 3.00 (Principals -- Defined), CALJIC No. 3.01 (Aiding and Abetting -- Defined), CALJIC No. 8.10 (Murder -- Defined), CALJIC No. 8.11 ("Malice Aforethought" -- Defined), CALJIC No. 8.20 (Deliberate and Premeditated Murder), CALJIC No. 8.30 (Unpremeditated Murder of the Second Degree), and CALJIC No. 8.65 (Transferred Intent). The trial court did not instruct the jury on felony murder or the natural and probable consequences doctrine.

In 1996, a jury found Singletary guilty of the first degree murder of Shaolin, as well as five counts of attempted murder. The jury also found true the special allegations that a principal was armed with a firearm during the murder and attempted murders. The trial court sentenced Singletary to 27 years to life: 25 years to life for the murder, plus one year for the firearm enhancement on the murder; and a consecutive life sentence for attempted murder, plus one year for the firearm enhancement on the attempted murder. The court imposed concurrent sentences

3

of life plus one year for the other four attempted murder counts. Singletary appealed his convictions.

As set forth in this court's opinion in Singletary's and Williams's direct appeals of their convictions, Singletary challenged four of his five attempted murder convictions on the ground the evidence was insufficient to demonstrate he specifically intended to kill four of the alleged attempted murder victims. Singletary did not challenge on appeal the sufficiency of the evidence demonstrating he specifically intended to kill Seyedi (the other attempted murder victim). (*People v. Williams*, *supra*, B107685, pp. 5, 9.) Nor did he challenge his murder conviction. As explained in the opinion, Singletary was guilty of Shaolin's murder under the doctrine of transferred intent, as he shared Williams's intent to kill Seyedi. (*Id.* at p. 9, fn. 8.) This court reversed the four attempted murder convictions Singletary challenged, concluding the evidence was insufficient to show "Singletary shared Williams's intent to kill anyone other than Seyedi." (*Id.* at p. 10.)

On March 14, 2019, Singletary filed a petition for resentencing under Penal Code section 1170.95,[2] a statute which permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the court to have the murder conviction vacated and to be resentenced, if the person could not be convicted of murder today in light of amendments to sections 188 and 189. Senate Bill No. 1437, which added section 1170.95 and amended sections 188 and 189, was enacted in 2018 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to

---

[2] Further statutory references are to the Penal Code.

murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).)

On May 20, 2019, the district attorney filed a response to Singletary's section 1170.95 petition, attaching as exhibits to the response, among other things, the jury instructions given at Singletary and Williams's trial and the opinion in Singletary's and Williams's direct appeals of their convictions. The district attorney urged the trial court to deny Singletary's petition, arguing (1) Singletary did not fall within section 1170.95, as he was convicted of murder as a direct aider and abettor and not under either a felony murder or natural and probable consequences theory of culpability; and (2) section 1170.95 is unconstitutional. On May 31, 2019, Singletary, as a self-represented litigant, filed a supplemental brief in support of his petition. On August 12, 2019, appointed counsel for Singletary filed a brief in reply to the district attorney's response to the petition, arguing section 1170.95 is constitutional (but not addressing whether Singletary falls within the provisions of 1170.95).

On August 16, 2019, after a hearing at which attorneys for both sides were present, the trial court issued a minute order denying Singletary's petition for resentencing under section 1170.95 and stating: "Court finds that petitioner failed to make required prima facie showing because petitioner was not convicted on a felony murder or natural and probable consequence theory and is therefore ineligible for relief."

Singletary filed a timely notice of appeal, and this court appointed counsel for him. After examination of the record, counsel filed an opening brief raising no issues and asking this court to review the record independently pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). On July 9, 2020, we sent a letter to Singletary and his appointed counsel, advising Singletary that within 30 days he could personally submit any contentions or issues he wanted us to consider, and directing counsel to send the record and opening brief to Singletary immediately. On July 22, 2020, Singletary's appointed counsel requested an extension until November 9, 2020 for Singletary to file a supplemental brief, and we granted the requested extension. As of the date of this opinion, Singletary has not filed a supplemental brief, and we have received no further request for an extension.

Because Singletary's appeal is not his first appeal of right from his conviction, he is not entitled to our independent review of the record pursuant to *Wende* or its federal constitutional counterpart, *Anders v. California* (1967) 386 U.S. 738. (See *People v. Kelly* (2006) 40 Cal.4th 106, 119; *People v. Serrano* (2012) 211 Cal.App.4th 496, 503 (*Serrano*); *Pennsylvania v. Finley* (1987) 481 U.S. 551, 559.)[3] He is entitled, however, to file

---

[3] Under *Serrano*, in a criminal appeal in which *Wende* does not apply, counsel who finds no arguable issues is still required to (1) inform the court that counsel has found no arguable issues to be pursued on appeal; (2) file a brief setting out the applicable facts and law; (3) provide a copy of the brief to appellant; and (4) inform the appellant of the right to file a supplemental brief. (*Serrano, supra*, 211 Cal.App.4th at p. 503, citing *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544 (*Ben C.*).)

a supplemental brief and, if he files such a brief, to our review of his contentions. (See *Serrano*, at p. 503; cf., *Ben C.*, *supra*, 40 Cal.4th at p. 544, fn. 6; *Ben C.*, at pp. 554–555 (dis. opn. of George, C. J.).) If no supplemental brief is filed, we may deem the appeal to be abandoned and dismiss the appeal. (*Serrano*, at pp. 503-504.)

Under either *Wende* or *Serrano*, we are satisfied that Singletary's counsel has fully complied with counsel's responsibilities. (See *Wende*, *supra*, 25 Cal.3d at p. 441; *Serrano*, *supra*, 211 Cal.App.4th at p. 503.) Singletary did not file a supplemental brief. Accordingly, we dismiss Singletary's appeal as abandoned. (*Serrano*, at pp. 503-504.)

## DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7